IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DANIEL PAUL COPPLE**                                                                                    **PLAINTIFF**

**V.**                                                                                    **NO. 4:25-CV-69-DMB-RP**

**VITAL CORE, et al.**                                                                                    **DEFENDANTS**

**OPINION AND ORDER**

Daniel Paul Copple asserts 42 U.S.C. § 1983 claims alleging inadequate medical treatment during his confinement.  Because Copple fails to state an Eighth Amendment claim against the defendants for inadequate medical care, this case will be dismissed.

**I**
**Procedural History**

On February 10, 2026, Daniel Paul Copple filed an amended pro se prisoner complaint in the United States District Court for the Northern District of Mississippi against Vital Core (HS), Dr. Peter Ma, MDOC Commissioner Burl Cain, MDOC Superintendent Marc McClure, Nurse Linda Cockrell, Nurse Ykenna Burton, and Dr. Antonio Costello,[1] alleging under 42 U.S.C. § 1983 inadequate medical care in violation of the Eighth Amendment.  Doc. # 26.  On his claims, Copple requests "$2,000,000.00 for actual damages, punitive damages, and mental anguish and all court costs," as well as injunctive relief, namely that he be provided "the necessary treatments to sustain [his] natural health and bodily functions at any and all costs."  *Id.* at PageID 162.

---

[1] Copple filed his original complaint against Vital Core (HS), Ma, Cain, and McClure on May 27, 2025.  Doc. #1.  On June 6, 2025, the Court ordered Copple to submit within thirty days additional information—a description of each named defendant's personal involvement in the alleged actions or inactions identified in his complaint.  Doc. #12. Copple submitted his response on July 1, 2025.  Doc. # 14.  By August 4 order, the Court directed Copple to show cause why his claims should not be dismissed with prejudice for failure to state a claim.  Doc. #16.  Copple timely filed a response to the show cause order on September 15, 2025.  Docs. #20, #21.  On January 20, 2026, Copple was granted leave to file an amended complaint to add Cockrell, Burton, and Costello as defendants.  Doc. #25.

On February 19, 2026, the Court ordered Copple to show cause why his claims should not be dismissed with prejudice for failure to state a claim upon which relief can be granted. Doc. #27. Copple filed his response to the show cause order on March 10, 2026. Doc. #28.

**II**
**<u>Standard</u>**

Because Copple was permitted to proceed in forma pauperis in this case,[2] his claims are subject to sua sponte dismissal under the Prison Litigation Reform Act ("PLRA").[3] 28 U.S.C. § 1915(e)(2).[4] The PLRA obligates the Court to evaluate the complaint and dismiss it if it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." *Id.* at § 1915(e)(2)(B)(i)–(iii). A claim is frivolous if it "lacks an arguable basis either in law or fact." *Damond v. City of Rayville*, 127 F.4th 935, 938 (5th Cir. 2025) (per curium) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). A complaint fails to state a claim if relief could not be granted to the plaintiff "under any set of facts that would be proven consistent with the allegations" in the complaint. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citation omitted); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint fails to state claim only where it does not plead "enough facts to state a claim to relief that is plausible on its face").

**III**
**<u>Factual Allegations</u>**

Daniel Paul Copple is an inmate in the custody of the Mississippi Department of Corrections ("MDOC") and is currently housed at the Mississippi State Penitentiary ("MSP") in

---

[2] Doc. #8.

[3] "[Copple] was incarcerated when he filed this suit." Doc. #16 at 1.

[4] *See* 28 U.S.C. § 1915A (subjecting prisoner complaint to preliminary screening regardless of in forma pauperis status).

Parchman, Mississippi. Doc. #26 at PageID 141, 163, 169. Copple experienced rectal bleeding, severe abdominal pain, and constipation beginning sometime in January or February of 2024. *Id.* at PageID 146. He submitted a sick call, and when he was taken to Unit 42, the hospital at MSP, he advised the nurse that he noticed blood in his stool at the end of 2023 but dismissed it due to not seeing any other signs of blood. *Id.* During that visit, Copple was given a fecal smear test and an x-ray, his blood was taken, and he was told he had internal hemorrhoids; no physical exam was performed. *Id.*

Copple's condition worsened in the months that followed but he was only treated with additional hemorrhoidal ointment, laxatives, and omeprazole. *Id.* He was taken to Unit 42 numerous times but a physical exam was never performed. *Id.*

Beginning sometime around August or September 2024, Copple could no longer eliminate his bowels without the use of a liquid laxative, which he drank three or four mouthfuls of per day and for which he was not given a dosing cup. *Id.* at PageID 146–47. Around that same time, he experienced another major bleeding event, and because nothing was being done to diagnose and treat his medical issues, he filed an Administrative Remedy Program ("ARP") grievance in September 2024. *Id.* at PageID 147.

On October 14, 2024, Copple was sent to Greenwood GI where he was seen by Dr. Goldberg, who advised Copple he would be scheduled for a colonoscopy. *Id.* In November 2024, Copple received a First Step Response to his ARP grievance. *Id.* The response was issued on November 14, 2024, and informed Copple that a colonoscopy had been scheduled but did not identify the date for which it had been scheduled for security reasons. *Id.* Because he would finally be having a colonoscopy, Copple decided not to file the second and final step of the ARP process. *Id.*

When Copple first reported his medical issues, he advised he had no known family history of colon cancer but later learned that his mother had colon cancer 25 years earlier. *Id.* at PageID 148. And while he was waiting for his colonoscopy, he learned both his sisters had cancer removed from their colons. *Id.* at PageID 147–48.

Copple submitted another sick call and was taken to Unit 42 on March 13, 2025. *Id.* at PageID 148. During that visit, he told Nurse Gentry that his condition had worsened, asked why he had not yet had the colonoscopy, and asked her to update his file to include a family history of colon cancer. *Id.* She replied that she did not have access to information regarding his colonoscopy or his patient history. *Id.* After being summoned to help by Nurse Gentry, Nurse Cockrell decided to bring Copple back the next day to see a doctor and provided Copple with dosing cups for the prescribed laxative. *Id.* at PageID 148–49.

Copple returned to Unit 42 the next day and spoke with Dr. Ma. *Id.* at PageID 149. He told Dr. Ma that he had a colonoscopy scheduled around October 14, 2024. *Id.* Dr. Ma informed him that a colonoscopy had been scheduled for December 10, 2024, but was rescheduled, and another appointment was coming up soon. *Id.*

Copple submitted an Emergency ARP grievance on March 18, 2025. *Id.* He was called to Unit 42 for chronic care on March 26, 2025. *Id.* at PageID 150. During that visit, Nurse Brown told him that he had missed a colonoscopy appointment on January 31, 2025. *Id.* Also in attendance, Nurse Burton advised that he was scheduled again for the procedure on March 21, 2025, and asked if he had made it; he responded in the negative because no one told him of the appointment. *Id.* at PageID 150–51.

On April 1, 2025, Copple filed a "Petition For Motion To Show Cause" in the Circuit Court of Sunflower County, Mississippi. *Id.* at PageID 150. A few days later, Copple received a

response to his Emergency ARP, which advised:

> Mr. Copple, you were seen 3/14/25 by Dr. Ma where he spoke to you about your hemorrhoids and how [misusing] the lact[u]lose may have made them worse and increased the bleeding from them. You are scheduled for a colonoscopy, where a specialist will be able to determine what the source of your problem is. Please do not hesitate to place a sick call to be seen if the bleeding becomes concerning. You are scheduled to follow up in C[h]ronic Care soon, so please make sure to attend that appointment.

*Id.* at PageID 149–50. On April 7, 2025, Copple was called back to Unit 42, and Nurses Brown and Ball advised he had a colonoscopy coming soon. *Id.* at PageID 151.

On April 11, 2025, Dr. Goldberg from Greenwood GI performed Copple's colonoscopy and informed Copple that he had rectal cancer, the cancer was the source of his symptoms, and he did not have hemorrhoids. *Id.* Copple submitted a sick call on May 7, 2025, to inquire about the prognosis of the CT scan which was done on April 22, 2025. *Id.* When Dr. Ma saw Copple on May 8, 2025, he told Copple that he did not know the stage of the cancer, the CT scan showed a hernia and possible cancer on both kidneys, and a biopsy would be needed to determine if it was cancer or not. *Id.* at 151–52.

Copple was seen by Dr. Rafique at Greenwood Cancer Center on May 19, 2025, at which time he was advised that treatment would consist of chemotherapy and surgery followed by radiation. *Id.* at PageID 152. Dr. Rafique told Copple that he would not test to determine the stage of the cancer because Vital Core does not pay for that procedure. *Id.* As of June 24, 2025, the cancer treatment had not begun. *Id.*

### IV
### Analysis

#### A. Inadequate Medical Care

As relayed above, Copple's sole complaint is his dissatisfaction with the medical care provided to him relevant to his current diagnosis and treatment for rectal cancer. To prevail on an

Eighth Amendment claim for inadequate medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to serious medical needs of prisoners [which] constitutes the 'unnecessary and wanton infliction of pain.'" *Parker v. Hooper*, 171 F.4th 736, 755 (5th Cir. 2026) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). The test for deliberate indifference is one of "subjective recklessness as used in the criminal law." *Johnson v. Thaler*, 507 F. App'x 370, 371 (5th Cir. 2013) (per curium) (quoting *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994)). Specifically, "[a] plaintiff 'must show that the defendant: (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively drew the inference that the risk existed; and (3) disregarded the risk.'" *Spikes v. Wheat*, 141 F.4th 662, 668 (5th Cir. 2025) (per curium) (quoting *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019)). "Mere negligence, neglect or medical malpractice is insufficient, as is an incorrect diagnosis." *Id*. (internal citations and quotation marks omitted). A prisoner's disagreement with medical treatment provided by prison officials does not state an Eighth Amendment claim against the prison. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Based on the allegations in his complaint, Copple was not denied medical treatment altogether; rather, he was seen and treated consistently from the time he first complained of his health/medical issues. He was taken to Unit 42 each time he submitted a sick call; repeatedly tested from the very first visit (including a fecal smear, blood, and x-ray); prescribed medications for what was believed to be the cause of his medical issues; sent to specialists; ultimately underwent a colonoscopy; and provided a treatment plan for his diagnosis that is in place. While Copple is clearly dissatisfied with the medical care provided—namely, the initial misdiagnosis, and the expediency and quality of care provided—his allegations as presented do not indicate

6

deliberate indifference to his medical needs. The alleged facts show the defendants provided, or attempted to provide, Copple relief and medical care every time he complained of medical issues. Further, though when Copple first reported the issues he was not aware of his family history of colon cancer, a colonoscopy was performed within a month after he learned of his familial cancer history and reported it.

Copple argues that he "does not dispute medical judgment; he disputes complete failure to exercise medical judgment," because the "Defendants persisted in a course of treatment they knew or should have known was ineffective while ignoring classic symptoms of a life-threatening condition and allowed three scheduled diagnostic procedures to lapse without explanation." Doc. #28 at 4. Copple relies heavily on *Spikes v. McVea*. *Id.* at 3–5. In that case, however, the only issue was whether the defendants there were entitled to qualified immunity. 8 F.4th 428, 434 (5th Cir. 2021), *vacated*, 12 F.4th 833 (5th Cir. 2021). After the district court found on remand that genuine issues of material fact precluded summary judgment, the Fifth Circuit reversed, holding that "none of the defendants was deliberately indifferent" when they treated an inmate who presented to prison medical staff repeatedly in a wheelchair with complaints of severe pain and inability to walk or bend his leg with only ibuprofen and a muscle rub, and did not order an X-ray until six weeks after his first appointment. *Wheat*, 141 F.4th at 666–67, 671. *Spikes* does not help Copple's argument.

Copple's allegations do not indicate that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks and citation omitted). So, Copple's allegations regarding inadequate medical care fail to state claim against the defendants.

### B. Supervisor Liability

Even if Copple's allegations indicated deliberate indifference to his serious medical needs, his allegations against Cain and McClure still would fail to state a claim upon which relief can be granted. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated his constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 & n.55 (1978). Instead, to state a viable § 1983 claim, the plaintiff must "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozana v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). There are only two scenarios where a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident that causes the constitutional deprivation, or (2) when he implements an unconstitutional policy that results in the constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Consequently, a supervisory official "can be held liable only for his own misconduct." *Carnaby v. City of Hous.*, 636 F.3d 183, 189 (5th Cir. 2011).

Copple's recitation of the chronological history of his medical treatment indicates no personal involvement by Cain or McClure. Though Copple makes certain conclusory allegations as to Cain and McClure—that each "exercises power and full control" over MSP—and opines of "systemic failures to put into place or to enforce the policies and procedures already in place,"[5] these allegations stem entirely from the supervisory nature of Cain's and McClure's positions with MDOC. Because Copple fails to identify any actions or inactions taken by either Cain or McClure with respect to alleged inadequate medical care, and because he fails to sufficiently allege any

---

[5] Doc. #26 at PageID 155, 156. Copple made similar conclusory allegations in his response to the show cause order. *See, e.g.*, Doc. #28 at 16 ("Cain and McClure's failure to act despite documented knowledge of systemic failures constitu[t]es a policy of deliberate indifference.").

official policy Cain or McClure implemented or failed to adopt that resulted in inadequate medical care, he fails to state a § 1983 claim against them.

### C. Vital Core

A private corporation, like Vital Core, "may be sued under § 1983 by a prisoner who has suffered an alleged constitutional injury." *Holton v. MTC*, No. 3:17-cv-485, 2018 WL 2424427, at *2 (S.D. Miss. May 29, 2018) (citing *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003)). "Although not subject to vicarious liability for the constitutional torts of its employees, a private corporation such as [Vital Core] may be held liable under § 1983 when an official policy or custom of the corporation causes, or is the moving force behind, the alleged deprivation of federal rights." *Id.* (collecting cases).

Copple alleges generally that "Vital Core was made aware of [his] serious medical issues in January/February 2024" and "Vital Core acted with deliberate indifference to [his] serious medical needs, ignored [his] complaints and intentionally delayed the medical procedure." Doc. #26 at PageID 152, 153. Beyond these largely general and conclusory allegations, Copple fails to tie Vital Core to any of the actions or inactions alleged in his complaint. Nowhere does he identify "an official [Vital Core] policy or well-settled custom of committing medical malpractice, mistreating inmates, or obfuscating constitutional violations committed by the police," or "a [Vital Core] policy maker responsible for defining the contours of any such corporate policy." *Favre v. Harrison Cnty.*, No. 1:21-cv-328, 2023 WL 4424630 at *1 (S.D. Miss. Apr. 27, 2023), *report and recommendation adopted*, 2023 WL 4236180 (S.D. Miss. June 28, 2023).

In response to the second show cause order, Copple argues that a custom "need not be formally adopted" and "may be established through evidence of 'a persistent, widespread practice of prison officials' that is 'so common and well-settled as to constitute a custom that fairly

9

represents corporate policy.'"[6]  Doc. #28 at 7.  However, the allegations Copple cites—that two doctors stated certain procedures are withheld to save money, several of his appointments lapsed, he received a colonoscopy only after threatening legal action, and "over the past 3 years several inmates have died from cancer and other medical issues"[7]—do not rise to the level of a persistent, widespread, and well-settled practice of denying adequate medical care that would constitute an Eight Amendment violation.  For these reasons, Copple fails to state a viable claim against Vital Core.

### D.  Individual Medical Providers

For the reasons above, Copple's allegations in general fail to state a claim for inadequate medical care.  The Court nevertheless briefly addresses the individual allegations against Ma, Costello, Cockrell, and Burton.

### 1.  Dr. Ma

Copple alleges that Dr. Ma is employed by Vital Core and began working in Unit 42 of MSP in September 2024; he was first treated by Dr. Ma on March 14, 2025, when Dr. Ma told him he had a colonoscopy coming up soon and had missed a colonoscopy appointment in December; Dr. Ma "had five and one half months to review [his] medical file and render medical aid to [his] serious medical needs;" and Dr. Ma "knew or should have known about [his] serious medical issues" and "treated [his] serious medical needs with deliberate indifference."  Doc. #26 at PageID

---

[6] Copple cites *Holton*, 2018 WL 2424427, at *2.  Doc. #28 at 7.  The Court cannot find this language anywhere in that case.  However, the quoted language is similar to the standard for establishing a municipal policy for § 1983 purposes. *See Vardeman v. City of Hous.*, 55 F.4th 1045, 1052–53 (5th Cir. 2022) ("[A] municipal entity's policy that derives from custom or practice must be so common and well settled as to constitute a custom that fairly represents municipal policy.") (quoting *Sanchez v. Young Cnty.*, 866 F.3d 274, 280 (5th Cir. 2017)); *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) ("[A] policy may also be evidence by custom, that is … a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.") (cleaned up).

[7] Doc. #28 at 7–8.

153–54.  Copple further avers that Dr. Ma told him that "necessary medical procedures are intentionally withheld by Dr. Singh to save money." *Id.* at PageID 155.  While Copple may believe Dr. Ma should have reviewed his medical file before ever having seen or treated him, he points to absolutely nothing to indicate Dr. Ma would have reason to review his file before first seeing him in March of 2025.  And Copple received a colonoscopy within a month of first being treated by Dr. Ma.  *Id.* at PageID 149, 151.  A period of less than a month is hardly an unnecessary delay. Further, according to Copple, Dr. Ma told him that Dr. Singh was the person responsible for denying medically necessary procedures, *not* Dr. Ma.[8]

### 2.  Dr. Costello

As to Dr. Costello, presumably also employed by Vital Core, Copple alleges that when he was taken to Unit 42 in March 2024, Dr. Costello  directed Cockrell to perform blood tests, a fecal smear test, and an x-ray, but did not speak with or examine him; and "[Dr.] Costello was aware of [his] condition from the beginning and was being informed via Cockrell and Burton's notes."  *Id.* at PageID 157, 159–60.  Copple points to no in-person treatment by Dr. Costello, and his own allegations indicate Dr. Costello directed Cockrell to perform multiple tests to assess the cause of Copple's medical issues.  These allegations hardly amount to deliberate indifference.

### 3.  Nurses Cockrell and Burton

Copple alleges he was first treated by Nurse Cockrell in March 2024; Cockrell performed blood tests, a fecal smear test, and an x-ray; the tests came back negative for cancer; and Cockrell prescribed him hemorrhoid cream and laxatives, and continued to do so when she saw him several times during the next year "even though [his] condition was getting worse."  *Id.* at 157–58.

---

[8] In his show cause response, Copple continues to cite *Spikes v. McVea* as authority for why his claims against each individual defendant should not be dismissed.  Doc. #28 at 10–14.  However, as noted above, in *Spikes v. Wheat* the Fifth Circuit later held that none of the defendants in that case were deliberately indifferent.  141 F.4th at 671.

Regarding Nurse Burton, Copple alleges he was treated by her several times between March 2024 and March 2025; like Cockrell, Burton prescribed hemorrhoid cream and laxatives to treat his bleeding and pain; and at some unidentified time he asked to see a doctor but Burton advised he could not see a doctor until he saw a nurse several times. *Id.* at PageID 158.

Copple's allegations evince continued treatment by both Cockrell and Burton. While Copple plainly disagrees with the treatment they provided, mere disagreement with the course of treatment provided fails to state a claim. *Gibbs*, 254 F.3d at 549; *Norton*, 122 F.3d at 292. At most, Copple's allegations indicate negligence, which cannot serve as the basis for § 1983 liability. *Wheat*, 141 F.4th at 668.

In sum, because Copple's allegations against Ma, Costello, Cockrell, and Burton fail to indicate the requisite deliberate indifference to his serious medical needs, they fail to state a claim upon which relief can be granted.

**V**
**<u>Conclusion</u>**

For the reasons above, this case is **DISMISSED without prejudice** This dismissal counts as a "strike" under 28 U.S.C. § 1915(g). Copple is cautioned that, under 28 U.S.C. § 1915(g), once he accumulates three strikes, he may not proceed in forma pauperis in any civil action or appeal filed while incarcerated unless he is in imminent danger of some physical injury.

**SO ORDERED**, this 21st day of May, 2026.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**
